NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JOSEPH R. FLYING HORSE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2017-1620

_____

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00860-MCW, Judge Mary Ellen Coster Williams.

_____

Decided:  June 13, 2017

_____

JOSEPH R. FLYING HORSE, Sioux Falls, SD, pro se.

JEFFREY D. KLINGMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant-appellee.  Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

_____

PER CURIAM.

Joseph R. Flying Horse, proceeding pro se, appeals from the judgment of the United States Court of Federal Claims ("Claims Court") dismissing his suit for lack of jurisdiction. Mr. Flying Horse, who is incarcerated in the South Dakota State Penitentiary, brought this suit under the "Bad Men" Clause of the 1868 Fort Laramie Sioux Treaty ("Fort Laramie Treaty") seeking declaratory judgment, monetary damages, and release from incarceration. Although we have liberally construed Mr. Flying Horse's arguments on appeal, we conclude that he has not exhausted his administrative remedies under the Fort Laramie Treaty. We therefore *affirm*.

## BACKGROUND

In May 2016, Mr. Flying Horse was arrested in Rapid City, South Dakota, and placed in the Pennington County Jail. In June 2016, he was transferred to the South Dakota State Penitentiary, where he currently resides. Mr. Flying Horse alleges that during his detainment at the Pennington County Jail, his parole officer and Department of Corrections supervising officials failed to follow Department of Corrections policies by not completing paperwork required to continue his detention. Mr. Flying Horse thus alleges that his continued incarceration at the Pennington County Jail was unlawful, and that the eventual rectification of the paperwork did not cure the unlawful nature of his detention because he should have already been released. He further alleges that the unlawful nature of his detention was due to a "conspired and concerted effort" on the part of the corrections officials. App'x 8.

In July 2016, Mr. Flying Horse filed a complaint in the Claims Court pursuant to the "Bad Men" clause of the Fort Laramie Treaty, the United States Constitution, and various tort claims. He seeks declaratory judgment against the corrections officials, monetary damages, and

injunctive relief allowing him to be released on parole. The Claims Court dismissed Mr. Flying Horse's case, holding that it lacked jurisdiction over his claims. The Claims Court first held that it lacked jurisdiction over his constitutional claims because the relevant constitutional provisions were not money-mandating. Next, the Claims Court held that Mr. Flying Horse had not alleged facts indicating that he was entitled to relief under the Fort Laramie Treaty or alleged that he had exhausted his administrative remedies under that treaty. Finally, it held that it lacked jurisdiction to entertain Mr. Flying Horse's claims which sounded in tort.

Mr. Flying Horse now appeals to this court, contending that the "Bad Men" clause of the Fort Laramie Treaty *is* money-mandating and is sufficient to support his claims. Mr. Flying Horse further contends that he is not "statutorily required" to exhaust administrative remedies. Appellant Br. at 7. This court has jurisdiction over his appeal pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review dismissal of a claim for lack of jurisdiction by the Claims Court de novo. *Richard v. United States*, 677 F.3d 1141, 1144 (Fed. Cir. 2012). Underlying questions of treaty interpretation are questions of law reviewed de novo. *Id.* at 1144–45.

This court has found similar "Bad Men" provisions in other Indian treaties to include at least a minimal exhaustion requirement. *Jones v. United States*, 846 F.3d 1343, 1348 (Fed. Cir. 2017) ("The 1868 [Ute] Treaty [] includes a requirement for a plaintiff seeking damages under the bad men provision to exhaust administrative remedies before filing a claim."). And the "Bad Men" clause at issue here requires the wronged person to submit "proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city." Fort Laramie Treaty, 15 Stat. 635, 635, Art. I, ¶ 2. Other

courts have found similar provisions to be satisfied by submitting a notice of claim or notice of intent to file suit to the Assistant Secretary of the Interior for Indian Affairs, the modern equivalent to the Commissioner of Indian Affairs. *See, e.g.*, *Jones v. United States*, 122 Fed. Cl. 490, 515 (2015), *vacated and remanded on other grounds*, 846 F.3d 1343 (Fed. Cir. 2017); *Elk v. United States*, 70 Fed. Cl. 405, 411 (2006). As the Claims Court correctly found, Mr. Flying Horse has not alleged that he has filed such a notice with the Department of the Interior.

Mr. Flying Horse relies on *Elk* and *Begay v. United States*, 219 Ct. Cl. 599, 602–03 (1979), to establish that exhaustion is not required. But in both of those cases, the plaintiffs had filed claims with the Department of the Interior. *See Elk*, 70 Fed. Cl. at 406 ("[The] plaintiff sent a Notice of Claim to the Department of the Interior . . . ."); *Begay*, 219 Ct. Cl. at 600–01 ("Plaintiffs allege, and defendant does not contest, that such claims for damages were made on September 30, 1977 to the federal Director for the Navajo Reservation, and copies sent to the Assistant Secretary of Interior."). Thus, these cases do not demonstrate that Mr. Flying Horse is not required to file a claim with the Department of the Interior.

### CONCLUSION

For the foregoing reasons, we hold that Mr. Flying Horse has failed to exhaust his administrative remedies under the "Bad Men" clause of the Fort Laramie Treaty and, therefore, *affirm*.

**AFFIRMED**

### COSTS

No Costs.